UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT ANTHONY SOWLES,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | 4:26-CV-04085-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

Plaintiff, Robert Anthony Sowles, filed a pro se lawsuit alleging violations of the Americans with Disabilities Act (ADA). Docket 1. Sowles also moves for leave to proceed in forma pauperis. Docket 3.

I.    **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After reviewing Sowles's financial

affidavit, the court finds he has insufficient funds to pay the filing fee. Thus, Sowles's motion for leave to proceed in forma pauperis (Docket 3) is granted.

## II.   1915 Screening

### A.   Factual Background

The following facts alleged by Sowles are accepted as true for purposes of this screening order under 28 U.S.C. § 1915.

Sowles alleges that Amazon unlawfully terminated his employment in violation of the ADA. Docket 1 at 7, 11. Amazon hired Sowles as a Maintenance Tech II at its FSD1 Fulfillment Center in Sioux Falls, South Dakota, on December 12, 2022. Docket 1-1 at 11, 55.

As a Maintenance Tech II, Sowles earned Unpaid Time (UPT) based on the number of hours he worked. *See id.* at 11, 20-23. Amazon's UPT Policy provides that "when an employee's UPT is negative and the employee does 'not have UPT or other time off options to cover [the employee's] missed shift, Amazon will review, [the employee's] employment [for termination] in accordance with its attendance policies.' " *Id.* at 11 (alterations in original). An Amazon employee can verify the amount of UPT hours they have by checking Amazon A to Z (A-Z App). *Id.* Additionally, absences covered by one of Amazon's Leave of Absence policies or Accommodations Policy do not result in the deduction of hours in the employee's UPT balance. *Id.* at 11, 22-23.

From June 2024 to October 2024, Sowles visited a series of doctors to treat his joint pain, swelling, fatigue, and increased susceptibility to infection. *Id.* at 38. On July 12, 2024, Sowles went to a specialist for treatment for pain

and swelling in his right ankle. *Id.* The specialist ordered bloodwork, which he received and analyzed between July 12 and July 15, 2024. *Id.* Sowles asserts that he provided these July 2024 medical records to Amazon prior to September 11, 2024, and that these medical records demonstrate "ongoing medical evaluation[s] for a suspected autoimmune condition." *Id.* (emphasis in original omitted)

In early September of 2024, Sowles asked Amazon's Human Resources (HR) about the process of applying for a medical leave of absence. *Id.* at 11. On September 11, 2024, relying on his submitted medical records, Sowles requested that Amazon approve retroactive leave to excuse his absences in July and August of 2024. *Id.* at 38-39. Amazon partially granted Sowles's request and restored his UPT balance to over 40 hours. *Id.* at 39, 93-101.

Sowles then missed four shifts from September 18 through September 21, 2024, because he was sick with respiratory syncytial virus (RSV). *Id.* at 39-40. During this same period, Sowles's scheduled shifts increased from 10 hours to 12 hours. *Id.* at 39. The change in his shift hours, however, was not reflected in the A-Z App until October 16, 2024. *Id.* at 39-40. Thus, from September 21, 2024, to October 16, 2024, Sowles's A-Z App showed a positive UPT balance. *Id.* at 40. During his shift on October 16th, however, Sowles's UPT balance dropped to -8 hours in his A-Z App. *Id.* Sowles alleges that he was unaware that his UPT hours dropped 12 hours per missed shift because the A-Z App only reflected 10 hour drops for each missed shift. *Id.* Instead, Sowles

3

asserts that until October 16th, he believed his four missed shifts were completely covered by his UPT hours. *Id.* at 41.

Sowles asserts that after he discovered his negative UPT balance on October 16th, he went to Amazon's HR office to discuss his negative balance. *Id.* at 43. HR explained to him that his shift increased from 10 to 12 hours during the four shifts he missed, and that the increase in hours was not reflected in the A-Z App until that day. *Id.* at 43-44. HR also told Sowles to contact Disability and Leave Services (DLS) to request retroactive leave and warned Sowles that if his UPT balance remained negative, Amazon may terminate his position. *Id.* at 44-45. Because Sowles did not have documentation from a doctor diagnosing him with RSV,[1] he did not contact DLS or apply for retroactive leave. *Id.* at 43-44.

Sowles continued to work his scheduled shifts from October 17th through October 19th. *Id.* at 45. During his shift on October 19th, HR only discussed Sowles's UPT balance, which remained at -8 hours. *Id.* at 46. Following this shift, Sowles asserts he found an email from Amazon warning him of possible termination if his UPT balance remained negative. *Id.* at 47. The email provided that Sowles had 48 hours to respond, and Sowles asserts that he immediately responded to the email. *Id.* at 47-48. But in a letter sent on October 20, 2024, Amazon informed Sowles that his employment with

---

[1] Sowles explained that he did not go to the doctor because other members of his immediate family had RSV, which was diagnosed by a doctor. *See* Docket 1-1 at 43-44, 84-89. Sowles asserts that going to the doctor would have been pointless because he only would have obtained documentation, not treatment. *Id.* at 44.

4

Amazon was terminated effective October 19, 2024, due to his negative UPT balance. *See id.* at 29-30.

Sowles called the Amazon Ethics Line in late October to contest his termination. *Id.* at 49-50. After its investigation, Amazon confirmed that his UPT hours were accurate and upheld Sowles's termination. *Id.* at 50. On November 27, 2024, Sowles was formally diagnosed with an autoimmune condition and inflammatory arthritis. *Id.* at 50; *see also id.* at 92. Sowles's doctor explained that Sowles had "a permanently diagnosed condition that may intermittently impact [his] ability to perform work duties." *Id.* at 92. Sowles's doctor stated that Sowles's condition may require periodic absences from work, which may last up to 4 days depending on symptom severity. *Id.* Sowles's doctor further recommended that Sowles be assigned morning shifts because patients with similar conditions typically experience "greater functionality in the morning hours." *Id.*

On February 28, 2025, Sowles again contacted Amazon arguing that his employment should not have been terminated. *Id.* at 51. Sowles reiterated that he did not request a leave of absence because he believed he had sufficient UPT hours to cover his four missed shifts. *Id.* at 51-52. Amazon again upheld Sowles's termination. *Id.* In March of 2025, Sowles filed an EEOC Charge. *Id.* at 52. Sowles was later rehired by Amazon on May 12, 2025, as a Mechatronics & Robotics Technician at FDS1. *Id.* at 32, 52. On February 13, 2026, the EEOC informed Sowles that it would not proceed further with his case and notified him that he had 90 days in which to bring a lawsuit against Amazon. *Id.* at 1.

5

In his complaint, Sowles argues that his initial termination on October 19, 2024, violated the ADA because "Amazon's reliance on an automated system to 'fire' employees without human verification of medical necessity or internal errors constitutes a systemic design to commit harm against those on disability." Docket 1 at 11. Sowles asserts that because Amazon refused to correct his UPT records upon his rehire, Amazon's refusal "constitutes a continuous violation and retaliation." *Id.* As such, Sowles requests "back pay, lost benefits, and interest from the date of the automated termination[,]" *id.*, which he calculates would be $67,776.00, *id.* at 10. Sowles also requests compensatory damages for emotional distress and punitive damages in the amount of $300,000. *Id.* at 11-12. Sowles requests injunctive relief to "permanently expunge the 'for cause' termination and mandate a human-led audit of all A-Z App UPT deductions triggered during shift changes or medical leave." *Id.* at 12.

B.    **Legal Standard**

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). *Martin-Trigona v. Stewart,* 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does,* 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

6

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v.*

*Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)).

Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting *Twombly*, 550 U.S. at 556). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (citation and internal marks omitted).

### C.    Legal Analysis

Before a plaintiff may bring suit under the ADA, a plaintiff must first file a charge of discrimination with the EEOC and receive a right-to-sue letter. 42 U.S.C. § 12117(a) (adopting the enforcement procedures in 42 U.S.C. § 2000e-s). Here, Sowles filed a complaint with the EEOC in March of 2025, Docket 1-1 at 52, and received a right-to-sue letter on February 13, 2026, *id.* at 1. Sowles filed his complaint within 90 days of receiving his right-to-sue letter. *See* Docket 1 (providing that the complaint was filed on May 11, 2026). Thus, Sowles has properly exhausted his administrative remedies with the EEOC, and the court addresses his claims for disability discrimination, failure to accommodate, and retaliation below. *See id.* at 7.

### 1.   Disability Discrimination Claim

"The ADA bars private employers from discriminating against a 'qualified individual on the basis of disability.' " *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 940 (8th Cir. 2018) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case of disability discrimination based on disparate treatment, "a plaintiff must show (1) that he or she was disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability." *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 921 (8th Cir. 2018). To establish a disability, an ADA claimant must show physical or mental impairment substantially limiting a major life activity, a record of such impairment, or that the claimant is regarded as having such impairment. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490-91 (8th Cir. 2002).

At this stage, Sowles has plausibly alleged his claim for disability discrimination under the ADA. First, Sowles adequately alleged that he is disabled under the ADA due to his autoimmune condition and seronegative inflammatory rheumatoid arthritis. Docket 1 at 4. Sowles provided a note from his doctor indicating that his autoimmune condition is "a permanently diagnosed condition that may intermittently impact [his] ability to perform work duties." Docket 1-1 at 92. Sowles's condition impacts his work performance because it results in periodic absences from work, ranging from 1-

4 days. *Id.* Liberally construing his allegations, the court finds that Sowles has adequately alleged that he is disabled.

Second, Sowles adequately alleges that he was qualified to do the essential job functions with or without reasonable accommodations. *Id.* at 73. "A qualified individual is an employee who (1) possesses the requisite skill, education, experience, and training for the position, and (2) is able to perform essential job functions, whether with or without reasonable accommodation." *Gantzer v. Surrey Pub. Sch. Dist. #41*, 2026 WL 866294, at *3 (D.N.D. Mar. 30, 2026) (citation omitted). While Sowles has not provided an exhaustive list explaining the essential functions of his job, Sowles alleges that Amazon's sole justification for his termination was his negative UPT hours, and not poor job performance. *See* Docket 1-1 at 29-30, 48. Additionally, Sowles alleges that Amazon has since rehired him and that he continues to work at one of Amazon's fulfillment centers. *Id.* at 32, 52. As such, at this stage, Sowles has adequately alleged that he is qualified to do the essential functions of his job with or without accommodations.

Third, Sowles adequately alleges that his termination was an adverse employment action arising from his disability. *See Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013) (finding that termination is an adverse employment action); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003) ("An adverse employment action is one that causes a material change in the terms or conditions of employment." (citation omitted)). Sowles asserts that Amazon was aware of his disability because he provided Amazon with his

10

medical records from July of 2024 indicating that he was undergoing testing to treat pain in his right ankle, swelling, fatigue, and increased susceptibility to infection. Docket 1-1 at 38. And Sowles explained that his autoimmune condition makes him more susceptible to illnesses such as RSV. *Id.* at 65. As such, Sowles alleges that due to his autoimmune condition, which caused the negative balance in his UPT hours due to his RSV illness, Amazon discriminated against him by terminating his employment. Thus, liberally construing Sowles's allegations, the court finds that he has adequately alleged a claim of disability discrimination under the ADA.

### 2.    Failure to Make Reasonable Accommodations

To state a failure to accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). A plaintiff must then show that the requested accommodation is reasonable. *See Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004). When an "employer is made aware of the legitimate need for an accommodation," the law requires it to "make a reasonable effort to determine the appropriate accommodation." *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 915 (8th Cir. 2013) (cleaned up and citation omitted).

Sowles alleges that Amazon violated the ADA by denying his request for retroactive leave. *See* Docket 1 at 11; Docket 1-1 at 73. Sowles alleges that he provided medical records and informed Amazon of his medical condition on multiple occasions, *see* Docket 1-1 at 38, 43-46, requested retroactive leave to

11

cover his four missed shifts due to his autoimmune condition, *id.* at 43-44, 65, and that Amazon refused to provide such accommodation despite being capable of doing so, *id.* at 63, 65. The court determined above that Sowles plausibly alleged a prima facie case of disability discrimination. Additionally, Sowles alleges that because Amazon previously awarded his request for retroactive leave, *see* Docket 1-1 at 38-39, 93-101, it would also be reasonable for Amazon to grant his request for retroactive leave to cover his four missed shifts. Thus, liberally construing Sowles's allegations, the court finds that because Sowles alleges that Amazon was aware of Sowles's need for accommodation due to his disability, and failed to grant this accommodation, Sowles has plausibly alleged a claim for failure to accommodate in violation of the ADA.

### 3.    Retaliation Claim

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate that "(1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse employment action; and (3) a causal connection between the two [events]." *Anderson v. KAR Global*, 78 F.4th 1031, 1036 (8th Cir. 2023) (internal quotation marks omitted). "Requesting an accommodation is a protected activity, and termination is certainly an adverse

employment action." *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003) (citation omitted); *see Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907-08 (8th Cir. 2010). "An individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [ ]he had a good faith belief that the requested accommodation was appropriate." *Heisler*, 339 F.3d at 632 (internal quotation marks and citation omitted).

Sowles alleges that Amazon retaliated against him after he requested retroactive leave to be applied to his four missed shifts on October 16, 2024. Docket 1-1 at 74. Sowles then alleges that after denying his request, Amazon terminated him three days later. *Id.* Sowles insinuates that the temporal proximity establishes the causal connection between these two events. *See id.* at 68, 74.

Here, Sowles engaged in a protected activity by requesting retroactive leave as a reasonable accommodation and experienced an adverse employment action when his position was terminated. *See Heisler*, 339 F.3d at 632. Additionally, the temporal proximity between his request of accommodation and his employment termination is sufficient to conclude, at this stage, that there is a causal connection between the two events. *See, e.g., Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding that because a two week period between protected activity and adverse action was "extremely close in time[,]" it was "sufficient, but barely so, to establish causation"). Thus,

13

liberally construing Sowles's allegations, the court finds that he has plausibly alleged a retaliation claim under the ADA.

But many district courts have held that "compensatory and punitive damages are not available on retaliation claims brought under 42 U.S.C. § 12203." *Riggs v. Bennett Cnty. Hosp. & Nursing Home*, 2019 WL 1441205, at *13 (D.S.D. Mar. 31, 2019); *see also Harms v. City of North Platte*, 2017 WL 6501848, at *2 (D. Neb. Dec. 19, 2017) (collecting cases and finding that § 12203 does not permit recovery of money damages); *Johnston v. City of Fort Smith*, 2021 WL 11132513, at *1 (W.D. Ark. May 26, 2021). Thus, Sowles's claims for compensatory and punitive damages on his retaliation claim must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

## III.   Conclusion

Thus, it is ORDERED:

1. That Sowles's motion for leave to proceed in forma pauperis (Docket 3) is granted.

2. That Sowles's disability discrimination, failure to accommodate, and retaliation claims survive § 1915 screening.

3. That Sowles's retaliation claim for compensatory and punitive damages is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

4. That the Clerk shall send one blank summons form and United States Marshal Service Form (Form USM-285) to Sowles so that he may complete the forms and cause the complaint to be served upon Amazon.

5. That Sowles shall complete and send the Clerk of Court a summons and USM-285 form for Amazon. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

6. That the United States Marshal Service shall serve the completed summons, together with a copy of the complaint, Docket 1 and Docket 1-1, and this order, upon Amazon.

7. That Amazon will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

Dated July 27, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

15